UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) <br> ) <br> v. ) <br> ) <br> GLADYS ARCE ) | Cr. No. 05-10048-RCL |

**GLADYS ARCE'S MOTION FOR DOWNWARD DEPARTURE AND INCORPORATED SENTENCING MEMORANDUM**

**I.  Introduction**

The defendant, Gladys Arce, is a fifty one year old woman, the mother of three grown children, who, when arrested on the present charges on March 30, 2005 was suffering from heroin addiction, the only illegal drug she ever used, and a drug she only began using in her forties.  Since her arrest, Ms. Arce stopped using heroin completely. She did not have a "dirty" test result in the 15 months she has been on release.  More impressively, she voluntarily weaned herself from methadone, going from a daily dose of 85 milligrams to 0, and she is now completely drug-free.

Ms.  Arce, respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of United States v. Booker, 125 S. Ct. 738 (2005); United States v. Jimenez-Beltre, ---

F.3d---, 2006 WL 562154 18-19(1st Cir. Mar. 9, 2006)(en banc)(Torruela, concurring)("Finally , I think it is of critical importance that the majority opinion be understood to reinforce our commitment to the statutory requirement that, in all cases, district courts must impose sentences that are "sufficient, but not greater than necessary" to effectuate the goals of criminal punishment, as articulated in 18 U.S.C. §3553(a).  In articulating its reasons for imposing any sentence, the district court must make clear reference to this central principle.")

Booker  restored the district courts' historic function and ability to fashion a sentence tailored to the individual circumstances of the case and defendant before it by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines.  In fact, under Section 3553(a), courts are required to sentence below the guideline range if such a sentence would be sufficient to achieve the statutorily proscribed purposes of punishment.

Ms. Arce moves the Court impose a sentence of time served, with a term of supervised release, a one hundred dollar special assessment and no fine. Such a sentence is a departure from the advisory guidelines, but a departure is warranted by the facts of this case, and the proposed sentence is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a) (2),  United States v. Booker, 125 S.Ct. 738 ( 2005) Under the circumstances of this case which include Ms. Arce's personal history and characteristics, and her very small role in the overall criminal activity, the proposed sentence is just, reasonable, sufficient and not greater than necessary.

**II. Procedural Background**

Ms. Arce arrested on March 30, 2005 on a federal indictment charging her with membership in a drug conspiracy, the 15th named defendant in a fifteen defendant case. She was released on March 31, 2005 on personal recognizance, with conditions, which included drug testing and attendance in drug counseling programs. She pled guilty on February 14, 2006 a single count of conspiracy to distribute and possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846. A Presentence Report (hereinafter the "Report" or "PSR") was prepared, and provided to the defense.

**III. Argument**

Following the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). Booker 125 S.Ct. at 764-65. In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. Id.

1. Nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)).

The sentencing court is directed to consider the history and characteristics of the defendant as well as the nature and circumstances of the offense. In this case, the defendant Gladys Arce is 51 years old, single, with three grown children and two grandchildren. She was born in Fort Myers, Florida, and moved to the Boston area with her mother and younger siblings when she was a young girl. She was brought up in a conservative and protective household, one where her mother would not let her leave the house on her own even as a teenager. PSR at ¶ 69 (All "¶" cites hereinafter are to PSR)

3

She has had serious life-long asthma affliction that has repeatedly interrupted and interfered with her education and employment. ¶¶70,75 As a result of this condition, she was forced to leave high school in the tenth grade ¶70. Nevertheless, she persevered and continued her education, receiving a GED and later attending Roxbury Community College, earning an Associates Degree.¶71

Ms. Arce has a substantial employment history, working for several years in a daycare center, five years for Western Union, five years for the Massachusetts Department of Social Services, and subsequently for a real estate company. ¶71,75

In 1973, Ms. Arce was married and had two sons, Rafael and Jose. She was divorced in 1884, and subsequently had a daughter, Michelle. Her son Raphael reports that Ms. Arce was a caring mother, who worked hard to provide for her children, was a "wonderful teacher". She met these responsibilities for the most part without the assistance of the children's fathers ¶72

It was not until the mid-1990's, when she was in her 40's and she began dating a man who used heroin that she tried heroin for the first time and quickly became addicted. ¶77,89. This is a woman who didn't have her first drink until she was twenty eight, and never experimented with marihuana or any other drug growing up, and who was naïve about drugs. ¶88 She used heroin that he supplied her until he was arrested, and his former source began supplying it directly to Ms. Arce. A significant portion of the drugs purchased in the instant case were for personal use by Ms. Arce, and the remainder was distributed to two fellow addicts.

Ms. Arce was debriefed by the government pursuant to a proffer agreement, but as is often the case with the bit players in a conspiracy prosecution, she could do no more

4

than identify the individual who had sold her the drugs, and hence was no eligible for a U.S.S.G. §5K1.1 motion. She had no part whatsoever in the wider conspiracy described in the offense section of the Report, and in fact doesn't know or recognize her fellow conspirators. She was nothing more than a small addict customer of the greater organization.

Prior to her arrest, Ms. Arce had made unsuccessful attempts to quit heroin. ¶91 She recognized that it was destroying her life. ¶89 She hid her addiction from her children, the two boys almost grown by this time. ¶79 She attended brief detox programs but each time resumed using. ¶91 Prior to her arrest, she had begun a methadone program, but continued to use heroin. Since her arrest, with the assistance provided by Pretrial Services and Shattuck Hospital's MAP program, she has finally achieved the success that eluded her. ¶90 She stopped using heroin completely has not had a single positive drug test while on release. She was using 85 milligrams of methadone daily, a substantial dosage, and slowly reduced the amount to the point that she stopped taking methadone altogether in March of this year. Id. Over the past year she has attended counseling through the MAP program, and also through AdCare, to which she was referred by Pretrial Services. She fully participated in the group sessions, and now attends individual counseling sessions. Upon information and belief, Bill Sullivan, the director of the program, will be forwarding a letter to the Court further expanding on Ms. Arce's progress.

2. The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"     (§ 3553(a)(2)(A)).

While the overall conspiracy charged in the Indictment constituted a very serious

offense, Ms. Arce's connection to that conspiracy was at best tangential. As discussed above, she was a customer of Mr. Diaz, buying for her own use and for two acquaintances. The heroin she received was often of poor quality, necessitating using larger amounts than normal to achieve a high. While the distribution of heroin is a serious offense, a differentiation must be made between the addict who is involved to support her own habit and the seller motivated solely by financial gain. A sentence of supervised release, requiring Ms. Arce to maintain her sobriety under that pains of revocation and incarceration, balances the need to condemn the offense but allow the now sober addict to continue to pursue recovery. It is doubtful respect for the law would be promoted by incarcerating someone in successful recovery, nor is the statutory goal of "just" punishment furthered by incarceration in this case.

       3. The need for the sentence "to afford adequate deterrence to criminal conduct" (§ 3553(a)(2)(B)).

While the threat of incarceration provides deterrence to those involved in the drug trade for financial gain, it is questionable whether those in throes of addiction are similarly deterred. The punishment that Ms. Arce suffered was years of addiction to heroin which in her own words destroyed her life. Heroin addicts routinely risk death from overdose, or cutting agents or additives to the drug, as well as from hepatitis, AIDS and other diseases. A sentence of supervised release with the threat of incarceration should she return to the use of heroin provides ample incentive to stay clean and to abide by the conditions imposed by the Court and enforced by Probation.

       4. The need for the sentence "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(c).

There is no indication that Ms. Arce poses any danger to the community that

6

requires her incarceration. As noted above, she led a law-abiding life marked by steady employment and raising her children until she became addicted in her forties. She has remained on release for over a year with absolutely no problems. Regular supervision by the Probation Department will assure that Ms. Arce remains free from drugs and meets her responsibilities. Any sentence of incarceration would be clearly "greater than necessary" to achieve this statutory goal.

     5. The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

Ms. Arce has benefited greatly from the resources made available to through the Shattuck Hospital and AdCare. A sentence of supervised release with conditions requiring continued drug counseling and drug testing will most effectively maintain and continue the recovery from heroin addiction Ms. Arce has made so far. Ms. Arce needs to continue to build a sober support system within her community to ensure long term success with her sobriety. There is no indication that any program available in an incarceration setting would be more effective, and in fact at this juncture it would likely be counterproductive and a step backward.

     6.    The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement"(§ 3553(a)(4) & (5)).

The Presentence Report sets forth a guideline range of 30 to 37 months, should the Court determine that Ms. Arce is "safety valve" eligible, which upon information and belief , she is. There exist in this case a substantial basis for departure below the guideline range pursuant to 5K2.0, as Ms. Arce's individual characteristics and those of this case place this case outside of the "heartland".

The Court should depart based upon Ms. Arce's extraordinary post-offense rehabilitation. Departures based upon post-offense rehabilitation are to be granted rarely, but are permissible. United States v. Craven 239 F.3d 91, 99 (1st Cir. 2001 ) The timing of the rehabilitation is a factor to be considered, i.e., whether it is undertaken pre-arrest or in sight of approaching sentencing. Id. at 100. But as the Court stated the "touchstone of extraordinary rehabilitation is a fundamental change in attitude" Id. That change in attitude, Ms. Arce's demonstrated commitment to treatment, her total abstinence from heroin, her voluntary weaning herself from methadone, is demonstrably present here. A finding of this fundamental change is also demonstrated by the candid and forthright proffer she made, albeit of little prosecutorial value due to her low stature in the conspiracy.

Moreover, the fact that Ms. Arce began the use of heroin so late in life compared to many addicts argues that she has a better chance to avoid recidivism and relapse[1]. She committed herself to her education, she has a history of stable employment, albeit she is currently disabled, and she was a responsible mother who raised three children with little spousal support. All this argues that there exists a degree of personal responsibility and personal strength of character that will support her in recovery and maintaining a law-abiding life.[2] It is clear that she was involved in the offense only due to her drug addiction; absent that condition there is no reason to believe she presents any risk of

---

[1] See United States v. Ward, 814 F. Supp. 23 (E.D. Va. 1993)(Departure warranted where guidelines fail to consider length of time defendant refrains from first crime, here until age 49)

[2] There is evidence that older addicts, and particularly women, have greater success in maintaining sobriety after treatment, in part due to lack of peer pressure that young people face to resume use. Derek D. Satre, Jennifer R. Mertens, Patricia A. Arean, and Constance Weisner, "Five-year alcohol and drug treatment outcomes of older adults versus middle-aged and younger adults in a managed care program" (2004). Addiction. 99 (10), pp. 1286-1297.

recidivism. Moreover, her age presages a lower risk that she will ever resume her former illegal conduct. See United States v Lucania 379 F. Supp. 2d 288, 297 (E.D.N.Y. 2005) ("Post-Booker courts have noted that recidivism is markedly lower for older defendants.").

In summary, Ms. Arce's extraordinary rehabilitation, the fact that she began drug use and had her first criminal violations so late in life, the low risk of recidivism and the concomitant higher chance of maintenance of sobriety, her strong history of meeting employment and familial responsibilities, taken as a whole, warrant departure from the advisory guidelines.

## IV. Conclusion

Since her arrest, Ms. Arce has put her life where it once was, where it was most of her life, until she fell until drug addiction a decade ago. She has made remarkable progress, and is a success story that the all those who assisted her in her recovery should be proud of. The sentence proposed will help assure Ms. Arce continues with her treatment, that she continues to be someone whose life was turned around by judicial intervention, and not simply another BOP statistic. Given the chance so prove herself on

release, she responded wonderfully.  The Court is urged to allow this success story to

continue.

                                                            Respectfully Submitted,
                                                            Gladys Arce
                                                            By his attorney

                                                           ___/s/ Michael C. Andrews__
                                                           Michael C. Andrews
                                                           21 Custom House Street
                                                           Boston, Massachusetts 02110
                                                           (617) 951-0072
                                                           BBO# 546470