```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS

       UNITED STATES OF AMERICA. CRIMINAL ACTION NO. 05-10048-RCL
                                .
            V.                  .  BOSTON, MASSACHUSETTS
                                .  MAY 19, 2005
       MANUEL DISLA, et al      .
       . . . . . . . . . . . . .

                     TRANSCRIPT OF STATUS
            AND RELEASE CONDITIONS (CARLOS RAMIREZ)
            BEFORE THE HONORABLE ROBERT B. COLLINGS
                UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the government:     Peter Levitt, Esquire
                        U.S. Attorney's Office
                        One Courthouse Way, Suite 9200
                        Boston, MA  02110
                        617-748-3100
                        peter.levitt@usdoj.gov


For Gladys Arce:        Michael Andrews, Esquire
                        Law Offices of Michael C. Andrews
                        21 Custom House Street, Ste. 920
                        Boston, MA  02110
                        617-951-0072
                        mcadmass@aol.com


For Leoanny Hernandez:  Victoria M. Bonilla-Argudo, Esquire
                        Bourbeau and Bonilla
                        77 Central Street, Second Floor
                        Boston, MA  02109
                        617-350-6868
                        vicky@lawgenie.com
(Also standing in for Elliot Weinstein, Esquire for Victor Filpo)


For Carlos Ramirez:     Joseph Voccola, Esquire
                        Voccola & Landry
                        454 Broadway
                        Providence, RI  02909
                        401-751-3900
(Also standing in for Randy Chapman, Esquire for Manuel Disla)

                     *MARYANN V. YOUNG*
                  Certified Court Transcriber
                     Wrentham, MA  02093
                       (508) 384-2003

```
For Fermin Hernandez:    Keith S. Halpern Esquire
                         Suite 3703
                         4 Longfellow Place
                         37th Floor
                         Boston, MA  02114
                         617-722-9952
                         ksh@keithhalpern.com


 For Jose Navarro:       Robert Sheketoff, Esquire
                                 One McKinley Square
                         Boston, MA  02109
                         617-367-3449
                         sheketoffr@aol.com
 (Also standing in for Lenore Glaser, Esquire for Luis Olmo Diaz


 For Rosa Pena:          Carlos Jorge Dominguez, Esquire
                         232 Commercial Street
                         Boston, MA  02109
                         617-742-2824
                         dmngzcarlos@aol.com
 (Also standing in for William Keefe, Esquire for
   Juan Merced-Toro)
```

Court Reporter:

Proceedings recorded by digital sound recording,
transcript produced by transcription service.

**_MARYANN V. YOUNG_**
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

1                            **I N D E X**

2   Proceedings                                      3

4

1                    **P R O C E E D I N G S**

2       COURT CALLED INTO SESSION

3              THE CLERK:  The case of the United States v. Manuel

4    Disla, et al, Criminal Action No. 05-10048 will now be heard

5    before this Court.  Will counsel please identify themselves for

6    the record.

7              MR. LEVITT:  Peter Levitt on behalf of the

8    government.  Good morning, Your Honor.

9              THE COURT:  Good morning.

10             MR. ANDREWS:  Good morning, Your Honor, Michael

11   Andrews for Gladys Arce.

12             THE COURT:  Hold on.  Okay.

13             MR. VOCCOLA:  Good morning, Your Honor, Joseph

14   Voccola for Mr. Carlos Ramirez.  I'm also standing in for

15   Attorney Randy Chapman today.

16             THE COURT:  And he represents Mr. Disla.

17             MR. VOCCOLA:  Mr. Disla.

18             THE COURT:  Yes, you're up.

19             MS. BONILLA:  Good morning, Your Honor, Victoria

20   Bonilla on behalf of Leoanny Hernandez and standing in for

21   Mr. Elliot Weinstein who represents Victor Filpo.

22             THE COURT:  Okay.

23             MR. HALPERN:  Good morning, Keith Halpern for Fermin

24   Hernandez.

25             MR. SHEKATOFF:  Good morning, Your Honor, Robert

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

5

1  Sheketoff for Jose Navarro, and also standing in for Lenore

2  Glaser who represents Luis Diaz.

3         THE COURT:  Okay.

4         MR. DOMINGUEZ:  Good morning, Your Honor, Carlos

5  Dominguez for Rosa Pena.  And I'm also standing in for William

6  Keefe who represents Juan Merced.

7         THE COURT:  Okay.  I want to make sure everyone is

8  represented by someone.  It appears that every – Mr. Sheketoff.

9  Yeah, it looks like everyone is, great.

10         MR. LEVITT:  Your Honor, the only person who's on the

11  initial joint status report who's not represented is on page

12  five, Adneer Gonzalez.  I've got him down as Tom Kerner who

13  apparently--

14         THE COURT:  Oh, right.  Yes, he is--

15         MR. LEVITT:  --is no longer in the case.  I believe

16  Ray Gillespie's been appointed for him but he hasn't even been

17  arraigned yet.  So he just shouldn't have been on the--

18         THE COURT:  Okay, thank you.

19         MR. LEVITT:  --initial status report.

20     PAUSE

21         THE COURT:  All right, Marie, what's the situation

22  here?

23     PAUSE

24         THE COURT:  Okay, I've got the joint initial status

25  report.  Is the 45 days before trial okay for the government's

6

1  expert reports and 21 days for the defendants?  That's the

2  standard we've used.

3          MR. LEVITT:  That's fine for the government.

4          THE COURT:  Okay.  Okay, defense counsel wanted to

5  discuss a motion date.  What's the story on that?

6          MS. BONILLA:  Good morning, Your Honor, Victoria

7  Bonilla on behalf of Leoanny Hernandez.  As this Court is aware

8  Mr. Weinstein and I came into the case this past Friday.

9          THE COURT:  Right.

10         MS. BONILLA:  I can advise the Court as I spoke with

11 Mr. Levitt yesterday, I have not yet received any of the

12 discovery and I do not, if Mr. Weinstein received it yesterday

13 afternoon, I had not received it.

14         THE COURT:  Okay.

15         MS. BONILLA:  So it's premature at least for Mr.

16 Weinstein and I to be talking about a motions date when we

17 don't have discovery yet.

18         THE COURT:  All right.  What is the nature of the

19 discovery you've provided, Mr. Levitt?  Are there preliminary

20 transcripts of these transmissions or is it a question of

21 giving copies of tapes or – give me some sense.

22         MR. LEVITT:  I sent out everything regular mail on

23 Monday and what it is is 760 pages of reports, surveillance

24 reports, that sort of thing.  All of the line sheets from the

25 wiretaps on a disc which is searchable by name or word.  The

7

1    line sheets are not transcripts.  They are summaries.

2            THE COURT:  I understand.

3            MR. LEVITT:  Okay.  And then made available all the

4    consensually recorded tape recordings and surveillance videos

5    about I think 80 or 90 recordings by sending them to a

6    duplicating center.  I also sent all of the affidavits--

7            THE COURT:  Okay.

8            MR. LEVITT:  --for the wiretaps.

9            THE COURT:  Okay.  As to the defendants that are not

10   just in the case, is June 30th an okay date for motions and how

11   far have you gotten in reviewing this discovery?  I mean I've

12   got a situation where the new people are going to, you know,

13   obviously delay the processing somewhat so I can give you a

14   little bit more time, but I'm just interested with that amount

15   of discovery you've been provided where are you folks in your

16   analysis?  Mr. Sheketoff?

17           MR. CHAKATOFF:  Well, personally, Your Honor, I've

18   had more trials since January 1st then I think I did in the

19   preceding five years.

20           THE COURT:  Nature of the business it's sort of.

21           MR. CHAKATOFF:  What happened to the idea of a plea

22   bargain?

23           THE COURT:  Yeah.  I think you have to ask Mr.

24   Sullivan about that.  But in any event--

25           MR. SHEKATOFF:  So I'm not very far in this.

8

1           THE COURT:  Yeah.

2           MR. CHAKATOFF:  As long as there is new people in the

3   case I'd ask for at least as much time as they have.

4           THE COURT:  All right.  Let me--

5           MR. SHEKATOFF:  The truth of the matter is I--

6           THE COURT:  Let me see where we are here.

7        PAUSE

8           THE COURT:  When did we arraign everyone in this

9   case?  Does anyone remember the arraignment date?  Mr. Levitt?

10          MR. LEVITT:  Well, Your Honor, there's been different

11  dates.  I think the first arraignments--

12          THE COURT:  Was March 31st.

13          MR. LEVITT:  --were March 30th.  And then there was--

14          THE COURT:  And outside the last two that just came

15  in when was the latest I arraigned everyone?  I see April 5th.

16  April 13th.  Okay.

17          UNIDENTIFIED:  I think May 13th.

18          THE COURT:  Yeah.  What if I set it for, how about I

19  set the motion date for everyone for mid-August?  Would that

20  help because that would obviously give Ms. Bonilla and Mr.

21  Weinstein the time that they would have had between the time

22  their client would be arraigned on June 30th.  Basically, we're

23  six weeks from arraignment of the other people.  So will that

24  work, Ms. Bonilla?

25          MS. BONILLA:  I think so, Your Honor.  We should be

9

1  done.

2  THE COURT:  And has Mr. Weinstein sent any messages

3  with respect to what his needs are?  Would that work for him?

4  MS. BONILLA:  He was also concerned about--

5  THE COURT:  Okay.

6  MS. BONILLA:  --the motions that day, Your Honor, -

7  (inaudible - #10:49:53).

8  THE COURT:  All right.  Now, okay we'll make it

9  August 15th for all non-discovery type motions.  Now, but not

10  seeking relief from the timing requirements 116.3, I don't

11  understand why you wouldn't want relief from those timing

12  requirements because that's the time period within which you're

13  able to make requests for discovery.  And if most of you

14  haven't even gone through what the government has given you,

15  are you really in a position to say that you want to waive the

16  right to request anything?  Could I just get some sense as to

17  why you're saying you're not seeking relief from those timing

18  requirements?

19  MS. BONILLA:  With all due respect, Your Honor, I

20  read it very fast--

21  THE COURT:  Oh, okay.

22  MS. BONILLA:  --this morning.  So obviously if there

23  is a problem either with Mr. Weinstein or myself in terms of

24  discovery we would come in and request relief.

25  THE COURT:  All right, I think I'm going to give

1  everyone on extension on that to mid-June, June 17th.  Just so

2  everyone knows that, you know, if you're going to request

3  additional discovery that's the date you have to send the

4  letter to the government.  And that'll put us in sync with the

5  motions cause that way if there are any disputes I'll be able

6  to resolve them and then they'll be all resolved by the time

7  you have to file your motions.

8          MR. LEVITT:  Your Honor, did the Court want to set a

9  response date on the August 15th motion.

10         THE COURT:  Local rules.

11     PAUSE

12         THE COURT:  All right, and I'll set the final status

13  conference for July.  The judges have instructed us now to send

14  the cases back to them as soon as discovery is complete and all

15  discovery disputes have been resolved and not to wait until,

16  you know, the motions have been filed.  So I'm going to set

17  this case for a final status conference, let's see--

18     PAUSE

19         THE COURT:  How does July 15th at 11:30?  Okay,

20  that'll be the final status conference.  I'll take care of the

21  Speedy Trial Act.  With these two new defendants coming in, we

22  basically start a new period that is binding on all the

23  defendants.  Anything else I need to take up from anyone?

24  Okay, that concludes the proceedings in this case except we

25  will, we'll go forward with the Ramirez matter.

11

1          COUNSEL:  Thank you, Your Honor.

2      COURT CALLED BACK INTO SESSION

3          THE CLERK:  The case of the United States v. Carlos

4   Ramirez, Criminal Action No. 05-10048 will now be heard before

5   this Court.  Counsel, please identify themselves for the

6   record.

7          THE COURT:  Counsel identify themselves for the

8   record, please.

9          MR. LEVITT:  Peter Levitt for the government.

10          THE COURT:  Thank you.

11          MR. VOCCOLA:  Joseph Voccola, Your Honor,

12   representing Mr. Ramirez.

13          THE COURT:  Okay.

14      PAUSE

15          THE COURT:  All right, do we have any of the

16   paperwork with respect to this real estate you wish to put up,

17   Mr. Voccola, or has that already been filed?

18          MR. VOCCOLA:  Your Honor, I have it all prepared.

19          THE COURT:  Okay.

20          MR. VOCCOLA:  And what I have done, Your Honor, I

21   obtained a certificate of title--

22          THE COURT:  Okay.

23          MR. VOCCOLA:  --from Christopher Maselli who's an

24   attorney in Providence who primarily deals with real estate

25   matters indicating the status of the title.  We also prepared a

12

1    quitclaim deed which Mr. Ramirez is prepared to sign--

2            THE COURT:  Okay.

3            MR. VOCCOLA:  --now as well as his wife who's in the

4    courtroom, prepared a mortgage, Your Honor.

5            THE COURT:  Right.

6            MR. VOCCOLA:  Prepared the escrow agreement.

7            THE COURT:  Right.

8            MR. VOCCOLA:  And we also prepared a rider to the

9    mortgage for the release of the declaration of homestead.  So I

10   believe--

11           THE COURT:  Yeah, that would have to be--

12           MR. VOCCOLA:  --I have all of it.

13           THE COURT:  What did you prepare?  What is it called

14   because I always thought it's a subordination of the homestead

15   to the government's interest.  What do you call it?

16           MR. VOCCOLA:  A release of the declaration, a rider

17   to the mortgage, release of declaration of homestead.  I

18   discussed that with the attorney who prepared the--

19           THE COURT:  Okay.

20           MR. VOCCOLA:  --quitclaim deed and he indicates it's

21   one and the same--

22           THE COURT:  Okay.

23           MR. VOCCOLA:  --really.

24           THE COURT:  And refresh my recollection on the

25   question of the value of the property and the $39,000 equity.

13

1   Had you given me an appraisal or something before?

2           MR. VOCCOLA:  Yes, Your Honor, I have the appraisal

3   with me as well.

4           THE COURT:  Okay.

5           MR. VOCCOLA:  And the appraisal appraises the

6   property at 260.

7           THE COURT:  Right.

8           MR. VOCCOLA:  It shows $40,000 in equity in the

9   property.  There's 220 owed on it.

10          THE COURT:  Okay.  Could I see both the appraisal and

11  the certificate of title please?

12          MR. LEVITT:  Your Honor, there's a second property as

13  well; is that right?  That was my understanding.  There's a

14  total of--

15          THE COURT:  No, I thought what we were talking about

16  was - my notes indicate a $39,000 equity which was what I

17  wanted and the third-party custodian, the wife, and electronic

18  monitoring will allow him to work.

19          MR. LEVITT:  The original proposal by Mr. Voccola was

20  two properties totaling $100,000 in equity.

21          THE COURT:  I'm not sure that's necessary.  Well, I

22  think 40, $39,000 is sufficient.  All right, could I see those

23  documents, please?

24      PAUSE

25          MR. LEVITT:  I may have been confusing one of the

14

1    other defendants who was here on the two properties.

2           THE COURT:  Yeah, Mr. – I think one of the other

3    defendants, Mr. Disla, there was more than one property

4    involved.

5           MR. LEVITT:  My mistake, Your Honor.

6        PAUSE

7           THE COURT:  Did you wish to see these, Mr. Levitt?

8           MR. LEVITT:  I would, Your Honor.

9           THE COURT:  Sure.  Could I take a look at the

10   documents, please, the mortgage, the deed and the escrow

11   agreement and the subordination of homestead?

12          MR. VOCCOLA:  Your Honor, I just have some notes on

13   what I have – (Inaudible – #10:59:35).

14          THE COURT:  Okay.  That's no problem.

15       PAUSE

16          THE COURT:  While you're looking at those I'm going

17   to take a brief recess and do these conditions on release on a

18   word processor.  That will make it a little easier.  So just

19   stay in place.  This will be about a five minute recess.

20                            RECESS

21          THE CLERK:  All rise.

22          THE COURT:  Okay, you may be seated.  Okay, does the

23   government have any comments about the release conditions?

24          MR. LEVITT:  Your Honor, just one.  We talked last

25   week about a condition that the defendant not cooperate

1  proactively with law enforcement while on release.

2          THE COURT:  Right.  Okay.  Anything else, Mr.--

3          MR. LEVITT:  No, Your Honor, I just note that there's

4  a typo on the certificate, certification of title.  Mr.

5  Ramirez's name is spelled wrong.

6          THE COURT:  Oh I'm sorry.  Okay, well--

7          MR. LEVITT:  Oh, no, it's the certification that was

8  provided by--

9          THE COURT:  Oh, oh, okay.

10         MR. LEVITT:  --by the attorney.  But other than that

11  it's--

12         THE COURT:  Okay.  Fine.

13         MR. LEVITT:  --fine.

14         THE COURT:  Unfortunately, I left the other things in

15  there which I'll have to go get but they're just the

16  signatures.

17         All right, Mr. Ramirez, if you'd stand, please.  Have

18  you read these conditions of release?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And I should ask, Mr. Voccola, are they

21  all set with you?  Any problems?

22         MR. VOCCOLA:  No, Your Honor.

23         THE COURT:  All right.

24         MR. VOCCOLA:  I've read them all and I've explained

25  them.

16

1          THE COURT:  Okay.  Does Ms. Rodriguez have a copy?

2          MR. VOCCOLA:  Not at the present moment, Your Honor.

3          THE COURT:  Would you give her a copy, please.  And

4   actually you can stay there, Ms. Rodriguez, cause I'm going to

5   be addressing you too.

6          MS. RODRIGUEZ:  Okay.

7          THE COURT:  All right, Mr. Rodriguez - excuse, Mr.

8   Ramirez, I'm going to go over these with you.  First, you're

9   going to sign a bond in the amount of 39,000 secured by the

10  equity in the real estate owned by you and Ms. Rodriguez at 32

11  Venice Street Providence, Rhode Island.  Do you understand

12  that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And do you understand that,

15  Ms. Rodriguez?

16         MS. RODRIGUEZ:  Yes, Your Honor.

17         THE COURT:  Now let me explain how that works.

18  You're going to be signing an escrow agreement, a deed to the

19  United States and a mortgage.  The deed to the United States

20  remains in escrow.  That means it's not filed in the Registry

21  of Deeds.  It remains in escrow.  The mortgage is filed in the

22  Registry of Deeds along with the subordination of homestead

23  basically to protect the government's interest while

24  Mr. Rodriguez is on release.  If Mr. Rodriguez appears at all

25  future proceedings and doesn't default, doesn't flee, is always

17

1  here, regardless of whether he's found guilty or not guilty at

2  the end of the case the mortgage will be discharged, the deed

3  will be destroyed and you both will own the property as you own

4  it today.  However, if Mr. Rodriguez flees, becomes a fugitive,

5  fails to appear that deed comes out of escrow, is filed with

6  the Registry of Deeds and the property becomes the property of

7  the United States subject to the mortgage.  And the United

8  States could sell the property, pay off the mortgage and take

9  up to $39,000 in the equity.  And this is an automatic thing.

10  Now, I'm not talking about failure to appear because he got

11  stuck in traffic or anything like that.  I'm talking about a

12  willful failure to show up in court or a decision to become a

13  fugitive or to flee.  That's what I'm talking about.  If that

14  happens it's automatic, the deed is filed; the property becomes

15  that of the United States.  You can't yell hardship, oh, I

16  didn't understand it, you know, or anything like that.  It's an

17  automatic thing.  This is the thing that guarantees his or

18  reasonably assures his appearance that if in fact he knows if

19  he doesn't appear the property is gone.

20          Now do you understand that Mr. Ramirez?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  And are you willing to put up your

23  property, the equity in your property knowing that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And, Ms. Rodriguez, do you understand

18

1   that?

2         MS. RODRIGUEZ:  Yes, Your Honor.

3         THE COURT:  And are you willing to have the property

4   put up--

5         MS. RODRIGUEZ:  Yes, Your Honor.

6         THE COURT:  All right.  It's going to be a condition

7   of your release, Mr. Ramirez, that you live only at 32 Venice

8   Street in Providence and at no other location.  Do you

9   understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Numbers three and four have been complied

12   with.  I have a certificate of your title, a current appraisal

13   and No. 5 has been complied with.  We have a declaration

14   subordinating the homestead to the property interest of the

15   United States.  Number six, Mr. Voccola, you've got to record

16   that mortgage and the subordination on the next business day

17   following the release which will be tomorrow.  And the copy of

18   the proof of filing of the mortgage and the subordination need

19   to be filed in the court three business days so that would be

20   by next Tuesday you need to file that in this court, proof that

21   you've recorded those two documents.  Do you understand that?

22         MR. VOCCOLA:  Yes, Your Honor.

23         THE COURT:  Now, Mr. Ramirez, you're going to be

24   subject to electronic monitoring at your residence and may not

25   leave except for specified purposes; one, for attending

1   previously scheduled appearance in court; two, for the purpose

2   of visiting an attorney who's representing you in a pending

3   criminal case, which would include obviously Mr. Voccola.  For

4   the purpose of seeking emergency medical care and for the

5   purpose of employment.  But other than that you are going to be

6   confined to the residence on electronic monitoring.  Do you

7   understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And permission to leave is conditioned on

10  you complying with all requirements imposed by pretrial

11  services with respect to your leaving the residence.  In other

12  words they're going to have a lot of requirements on you that

13  you have to fulfill before you go out for any of these purposes

14  and you have to comply with them.  Do you understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  All features on the telephone which are

17  incompatible with your electronic must be removed.  Has that

18  been taken care of?  In other words is there any call waiting

19  or call forwarding on the phone?

20         THE DEFENDANT:  No, Your Honor.

21         THE COURT:  All right.  Now, you're going to be

22  released to a third-party custodianship to Lizette Rodriguez

23  and let me explain to both of you what that involves.  I am

24  appointing Lizette Rodriguez as a third-party custodian.  That

25  means she undertakes a responsibility for the court as an agent

20

1   of the court to monitor your release on these conditions.  So

2   Ms. Rodriguez in becoming a third-party custodian is not

3   becoming someone that's going to be acting in your behalf,

4   although her actions will benefit you.  She's acting for the

5   court.  She undertakes a legal obligation to the court to make

6   sure you comply with these conditions of release.  And that

7   means that when she gives you directions with respect to these

8   conditions of release she's speaking for the court and you have

9   to obey her directions with respect to these conditions of

10  release.  Do you understand that Mr. Ramirez?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And are you willing to accept her

13  directions in connection with these conditions of release?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Ms. Rodriguez, do you understand your

16  obligations of the third-party custodian?

17          MS. RODRIGUEZ:  Yes, Your Honor.

18          THE COURT:  Now, there's one other part of that

19  that's very important.  Because your loyalty as I say is to the

20  court, you're undertaking a legal obligation to the court to

21  supervise Mr. Ramirez while he's on release, there's a very

22  important aspect to that, and that is that you are promising

23  that if in fact he violates these conditions of release that

24  you have to notify pretrial services even though that might

25  mean him going back to jail.  See that's what I mean when I say

1   your loyalty is not to him.  Your loyalty is to the court.

2   Now are you willing, ma'am, to report any violations of these

3   release conditions to pretrial services even though that may

4   result in him going back to jail?

5            MS. RODRIGUEZ:  Yes, Your Honor.

6            THE COURT:  And Mr. Ramirez, do you understand that

7   Ms. Rodriguez is undertaking that legal obligation that if you

8   violate these conditions she's obligated to tell pretrial

9   services?  Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And are you willing to accept her as

12  third-party custodian of you knowing that fact?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  All right.  You're not to apply for a

15  passport or any type of travel documents while on release.  Do

16  you understand that Mr. Ramirez?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  You're not to possess any firearms

19  destructive devices or dangerous weapons while on release and

20  there'll be no such items in your residence.  Do you understand

21  that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  You are not to use alcohol to excess and

24  shall not use or possess any narcotic controlled substance

25  except by prescription.  Do you understand that?

22

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  You're going to have to submit to random

3    drug testing by pretrial services.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  You are to notify pretrial services

6    within 24 hours if you're arrested.  Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Your travel is restricted to

9    Massachusetts and Rhode Island.  Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And while you're on release you may not

12   violate any law, any federal law, state law or local law and

13   including the provisions that I cite there which prohibit

14   obstruction of justice.  You can't do anything to injure,

15   intimidate or threaten witnesses, injure, intimidate or

16   threaten informants or do any other act which obstructs the

17   judicial process.  Do you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And on your other bail papers there'll be

20   an added condition that you are not to cooperate proactively

21   with law enforcement while on release.  Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right.  Do you understand these

24   conditions, Mr. Ramirez?

25         THE DEFENDANT:  Yes, Your Honor.

23

1          THE COURT:  Do you agree to abide by them?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And, Ms. Rodriguez, do you understand the

4    conditions?

5          MS. RODRIGUEZ:  Yes, Your Honor.

6          THE COURT:  Do you have any questions about them?

7          MS. RODRIGUEZ:  No, I don't.

8          THE COURT:  All right, you may take your seat.  Mr.

9    Ramirez, do you have any questions about this?  If you do why

10   don't you ask your attorney and he'll relay them to me.

11      PAUSE

12         THE COURT:  All set?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  All right.  Now I'm obligated to advise

15   you of the consequences should you fail to comply with these

16   conditions.  I've already told you one consequence.  If you

17   fail to show up in court when you're due in court basically the

18   house becomes the property of the government.  In addition, a

19   warrant would issue for your arrest.  And thirdly, you will

20   have committed a crime cause once you are on release as you're

21   going to be on release today, if you fail to show up in court

22   you commit the crime of failure to appear.  It's also known as

23   bail jumping.  It's punishable by time in jail and a fine and

24   it's not dependent on what happens on these cases.  You can be

25   found not guilty on this case that's currently before you, but

24

1   if you fail to appear in connection with it you can be

2   prosecuted and sent to jail for failure to appear.  Do you

3   understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  If you violate any other condition of

6   your release a warrant issues for your arrest and upon arrest

7   you face detention.  And if you commit any crimes while on

8   release there are added penalties.  Starting now you're going

9   to be on release.  If you commit a crime and are convicted and

10  get a sentence over and above that sentence, in addition to

11  that sentence you would get mandatory time in federal jail

12  cause you committed the crime while you were on federal bail.

13  Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Mr. Ramirez, if you comply with these

16  conditions you'll be at liberty until such time if ever that

17  you're convicted.  If you violate the conditions those are the

18  consequences.  I think the conclusion is obvious.  It's

19  entirely up to you.  I've set these conditions of release, you

20  obey them, you're out until a jury convicts you if a jury ever

21  does.  If you violate the conditions of release it's back to

22  jail.  And it's all in your hands.  Do you understand?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  All right.  I don't have a date for you

25  to come back to court but you should be in contact with your

1  attorney.  He'll always know whether there's a court date and

2  if there is whether your presence is required.  Your presence

3  is not always required in court when the case is called, for

4  example, and for status conferences and things like that.  But

5  he will know if you have to be in court and if you have to be

6  in court it's your responsibility to be in touch with him, know

7  the date and be here.  Do you understand?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  All right.  Well, now you'll have to sign

10  the, you and Ms. Rodriguez will have to sign the bond, the bail

11  papers and all of the real estate documents some of which I

12  took back to chambers which I will go get at this time.

13           MR. VOCCOLA:  Your Honor, I have one question.

14           THE COURT:  Yep.

15           MR. VOCCOLA:  The quitclaim deed should that be

16  signed here and kept in the custody of the clerk.

17           THE COURT:  That's right, that's kept in the custody

18  of the clerk.

19           All right, Marie, you want to come back and I'll give

20  you those documents.

21  //

22  //

23  //

24  //

25  //

26

1                            CERTIFICATION

2        I, Maryann V. Young, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital sound recording of the proceedings in the

5    above-entitled matter.

6

7    /s/ Maryann V. Young                 July 9, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                            *MARYANN V. YOUNG*
                        **Certified Court Transcriber**
                            **(508) 384-2003**