## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA.  CRIMINAL ACTION NO. 05-10048-RCL
                          .
     V.                   .  BOSTON, MASSACHUSETTS
                          .  JULY 15, 2005
     MANUEL DISLA, et al   .
     . . . . . . . . . . . .
```

TRANSCRIPT OF STATUS
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the government:      Peter Levitt, Esquire
                         U.S. Attorney's Office
                         One Courthouse Way, Suite 9200
                         Boston, MA  02110
                         617-748-3100
                         peter.levitt@usdoj.gov

For Gladys Arce:         Michael Andrews, Esquire
                         Law Offices of Michael C. Andrews
                         21 Custom House Street, Ste. 920
                         Boston, MA  02110
                         617-951-0072
                         mcadmass@aol.com

For Leoanny Hernandez:   Victoria M. Bonilla-Argudo, Esquire
                         Bourbeau and Bonilla
                         77 Central Street, Second Floor
                         Boston, MA  02109
                         617-350-6868
                         vicky@lawgenie.com
(Also standing in for Elliot Weinstein, Esquire for Victor Filpo)
 and Lenore Glaser, Esquire for Luis Olmo Diaz)

For Carlos Ramirez:      Joseph Voccola, Esquire
                         Voccola & Landry
                         454 Broadway
                         Providence, RI  02909
                         401-751-3900

```
For Fermin Hernandez:  Keith S. Halpern Esquire
                       Suite 3703
                       4 Longfellow Place
                       37th Floor
                       Boston, MA  02114
                       617-722-9952
                       ksh@keithhalpern.com


For Rosa Pena:         Carlos Jorge Dominguez, Esquire
                       232 Commercial Street
                       Boston, MA  02109
                       617-742-2824
                       dmngzcarlos@aol.com
```

Court Reporter:

Proceedings recorded by digital sound recording,
transcript produced by transcription service.

**_MARYANN V. YOUNG_**
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

3

<u>**I N D E X**</u>

Proceedings                                                          3

4

1              **P R O C E E D I N G S**

2        COURT CALLED INTO SESSION

3              THE CLERK:  The case of the United States v.

4   Aldadino, et al, Criminal Action No. 05-10048 will now be heard

5   before this Court.  Counsel please identify themselves for the

6   record.

7              MR. LEVITT:  Peter Levitt on behalf of the

8   government.  Good morning, Your Honor.

9              THE COURT:  Good morning.

10              MR. ANDREWS:  Good morning, Your Honor, Michael

11   Andrews for Gladys Arce.

12              MS. BONILLA:  Good morning, Your Honor, Victoria

13   Bonilla on behalf of Leoanny Hernandez, standing in for Mr.

14   Weinstein who represents Mr. Filpo, also standing in for Lenore

15   Glaser who represents Mr. Diaz.

16              THE COURT:  Okay.

17              MR. DOMINGUEZ:  Good morning, Your Honor, Carlos

18   Dominguez for Rosa Pena.

19              MR. CHAPMAN:  Randy Chapman, Your Honor, for Mr.

20   Disla.

21              THE COURT:  Okay.

22              MR. HALPERN:  Steve Halpern for Fermin Hernandez.

23              MR. VOCCOLA:  Good morning, Your Honor, for Joseph

24   Voccola for Mr. Ramirez.

25              THE COURT:  Okay.  All righty.

5

1    PAUSE

2        THE COURT:  I'm just reviewing this report.

3    PAUSE

4        THE COURT:  All right, tell me, Mr. Levitt, what's

5    the situation you say with Fermin Hernandez, sorry.

6        MS. BONILLA:  Well, regarding Mrs. Hernandez, –

7    (inaudible – #11:47:34)– she just received the tapes or the CD,

8    the discs at MCI-Framingham on July 5th and she's just had the

9    opportunity to start reviewing them.  So––

10       THE COURT:  Which defendant is this?

11       MS. BONILLA:  This would be Leoanny Hernandez.

12       THE COURT:  Oh, okay.  Well we've got the situation

13   where Mr. Gillespie's client, Adneer Gonzalez, was not, you

14   know, not brought into the district until a little bit later so

15   I'm certainly, he's not quite to the point where you folks all

16   are and of course I'd like to get things to the point where

17   everyone's on the same page before I send it to Judge Lindsay.

18       It says the defendants request the final status be

19   scheduled in approximately 30 days.  Will that be sufficient

20   time to review these, to complete your review of these tapes

21   for defense counsel?  Is 30 days enough time?

22       MS. BONILLA:  I can only speak for myself and Ms.

23   Hernandez and from speaking to Mr. Weinstein we would request a

24   little bit longer time if the Court would so allow.

25       THE COURT:  Okay.

6

1           MR. ANDREWS:  I join in that or Ms. Arce does.

2           THE COURT:  What is the situation with respect to the

3    motion?  The report says defense will address motions with the

4    Court at the July 15th status conference.

5           MR. LEVITT:  I put that in there, Your Honor, just

6    because I hadn't spoken with all the defendants.  I didn't want

7    to speak for them and I thought if they had issues with respect

8    to motions they could raise them with the Court today.

9           THE COURT:  Are there going to be any non-discovery

10   type motions from defense?

11       PAUSE

12         MR. CHAPMAN:  What kind?

13         THE COURT:  I'm talking about motions to dismiss,

14   motions to suppress, things of that sort.

15         MR. CHAPMAN:  I guess once I get through the

16   discovery, Your Honor, because we are just now going through

17   the warrant and the, on behalf of Mr. Disla, and he hasn't

18   listened to the tapes yet.  There may be, there was a

19   consensual search in his case so there is possibly that there

20   might be but I'm not even in a position to really intelligently

21   discuss that yet because we're still sort of going through the

22   discovery that's been provided.

23         THE COURT:  Okay.  Is that basically everyone else's

24   position or does anyone have a different position than that?

25         MR. VOCCOLA:  Your Honor, on behalf of Mr. Ramirez I

7

1   think that would be his position also.  I did file some

2   discovery motions.  I was going to speak to Mr. Levitt about

3   those today.

4          THE COURT:  Yeah, we'll get to those in a minute.

5          MR. VOCCOLA:  All right.

6          THE COURT:  Well, I think the best thing to do is to

7   continue this for a further final status conference in early

8   September by which time the defendants get their counsel to

9   have completed their review of the, of all the tapes.  How

10  about Wednesday the 14th of September?  Any problem with that?

11         MR. CHAPMAN:  That's fine on behalf of Mr. Disla,

12  Your Honor.

13         THE COURT:  Okay.  We'll do it at 11:30 a.m., and

14  I'll ask that a joint status report be filed, that an updated

15  joint status report be filed.  And at that time you're to tell

16  me whether or not you want time to file motions and if so how

17  much time and we'll set that then.

18         Now--

19         MR. LEVITT:  Your Honor, I'd just move that the time

20  from today until then--

21         THE COURT:  Oh, I'll exclude it.

22         MR. LEVITT:  Okay.

23         THE COURT:  I'll exclude it.  And that basically will

24  take care of Mr. Gillespie's motion where he actually requests

25  until the 15th of September so that takes care of that.

8

1        PAUSE

2            THE COURT:  Okay, does anyone have anything else

3    other than the question of Mr. Ramirez' motions?  Any counsel

4    on any other matter they need to bring to my attention?

5            MR. ANDREWS:  No, Your Honor.

6            THE COURT:  Okay.  I'll take up Mr. Ramirez' motions

7    at this time.  If any of you wish to go, you're free to go.

8            COUNSEL:  Thank you, Your Honor.

9            COUNSEL:  Thank you, Judge.

10           THE COURT:  Now, what is the situation – this motion

11   for exculpatory evidence the government seeks to strike it and

12   what is your position with respect to that?  These motions,

13   filing these types of motions went out, you know, seven years

14   ago when we instituted the new rules.  Did you request this

15   stuff pursuant to Local Rule 116.3?

16           MR. VOCCOLA:  Well, Your Honor, the reason I did not

17   request it pursuant to the local rule I filed it before the 15th

18   of June.  The reason I filed the motion was because I believe

19   that the government may have that type of information available

20   to it if the matter proceeds to trial.  And specifically, Your

21   Honor, that's why the motion was sent forth.

22           THE COURT:  Except that the rule says before you file

23   such a motion you have to write a letter of request.  The rule

24   is pretty clear on that--

25           MR. VOCCOLA:  Yeah.

9

1          THE COURT:  --and if you haven't written a letter

2  requesting this then this motion is improper.

3          MR. VOCCOLA:  Your Honor, I believe an initial

4  discovery letter went out and I'm just looking to see if I have

5  a copy of it.

6          THE COURT:  From you?

7          MR. VOCCOLA:  From me to Mr. Levitt.

8          THE COURT:  Well it should have been - under the rule

9  it has to be filed.  Did you get such a letter, Mr. Levitt?

10          MR. LEVITT:  I don't recall, Your Honor.  I certainly

11  don't recall getting anything specific on the types of matters

12  that were requested in that lengthy motion.

13          THE COURT:  Well, I'll give you a moment to find your

14  letter.

15          MR. VOCCOLA:  I don't have it with me, Your Honor,

16  but I can re-file the letter to comply with the rules if

17  there's any concern.

18          THE COURT:  Yeah.  I mean the whole purpose of these

19  rules was to avoid these motions which were--

20          MR. VOCCOLA:  Uh-huh.

21          THE COURT:  --you know, it used to be battle of the

22  word processor.  You know, defense counsel called for their

23  word processor motion and the government would have their word

24  have their word processor response and it was just a very, very

25  inefficient way of doing it.  So I'm going to deny the motion

10

1    for exculpatory evidence without prejudice.  And I'm going to

2    deny the government's motion to strike.  I don't think there's

3    any need to strike it but it's denied without prejudice and you

4    need to follow the local rules.

5              Now motion for a 12(b) designation, as I recall--

6              MR. VOCCOLA:  That--

7              THE COURT:  --I'm in a different courtroom--

8              MR. VOCCOLA:  Yeah.

9              THE COURT:  --and I don't have the book but as I

10   recall that's not the proper subject of a motion.  It's

11   something that you, it's a permissive thing as I recall how the

12   rule works.

13             MR. VOCCOLA:  Your Honor, I was going to allow that

14   one to pass with the Court's permission.

15             THE COURT:  What do you mean pass?

16             MR. VOCCOLA:  I don't need to argue it, Your Honor.

17             THE COURT:  But it's still on the docket so I got to

18   do something with it.

19             MR. VOCCOLA:  I can--

20             THE COURT:  Are you withdrawing it?

21             MR. VOCCOLA:  I can withdraw it, Your Honor.

22             THE COURT:  Okay.  That motion is withdrawn.  And

23   that leaves us with the situation with respect to Grand Jury

24   information.

25         PAUSE

11

1      MR. LEVITT:  Your Honor, with respect to that

2 motion--

3      THE COURT:  Yeah.

4      MR. LEVITT:  --I object to it for the same reason as

5 to the motion with respect to the exculpatory evidence.  There

6 is no letter sent with respect to that motion either.

7      THE COURT:  Well, that's a little, that's a little -

8 that's a little different.  It's not something that's covered

9 by the local rules whereas, you know, exculpatory evidence is

10 pretty well laid out.  The reason for the letter request is

11 that it's covered by the local rules whereas this stuff is not,

12 so I'm not quite sure that that comes within the meaning of

13 seeking discovery in the sense it's used in the rules.

14      MR. VOCCOLA:  Your Honor, I can explain to the Court

15 the reason--

16      THE COURT:  All right, go ahead.

17      MR. VOCCOLA:  --for the motion.  Your Honor, during

18 the detention hearing it became apparent that there was one

19 individual in particular who was capable or allegedly capable

20 of identifying my client's voice.  That was Detective Michael

21 Long who is a Providence police detective.  During the

22 detention hearing it was stated it was stated he was a Rhode

23 Island state police detective.  The reason for the motion for

24 the disclosure of grand jury information I'm curious as to how

25 my client was identified to the members of the grand jury and

1    who gave that testimony identifying his voice.  That's what

2    the motion I believe in essence allows for.  It came up during

3    the detention hearing.  I followed it up with this motion.  If

4    it's not included in the letter I can re-draft the letter,

5    frame it specifically or tailor toward what is asked in the

6    motion.

7            THE COURT:  Well what you want are the transcripts of

8    this person's testimony, is that what you're seeking?

9            MR. VOCCOLA:  That's what I would ask for, Your

10   Honor, in essence.  That's the reason for the motion.

11           THE COURT:  Well, the problem you're up against there

12   is you've got a federal statute that prohibits me ordering

13   prior statements of witnesses under the Jencks Act.  I mean,

14   you certainly would be entitled to it at time of trial.  Under

15   the statute it's after the witness testifies on direct, but the

16   usual practice is that the government turns that over at an

17   earlier time, about the time of trial but the statute says I

18   don't have the power to grant you prior statements of

19   witnesses.

20           MR. VOCCOLA:  I realize that, Your Honor, but it does

21   impinge on his – I mean that evidence was submitted to the

22   Court at the detention hearing.  If it was not addressed at the

23   detention hearing--

24           THE COURT:  Well wait a minute.  Let's, I suppose we

25   should refine this a little more.  Refresh my recollection as

13

1    to what was said at the detention hearing.  I know that police

2    officer didn't testify but what was there testimony as to the

3    manner in which your client's voice was identified?

4              MR. VOCCOLA:  That's correct, Your Honor.

5              THE COURT:  Refresh my recollection as to what the

6    testimony was at the detention hearing.

7              MR. VOCCOLA:  The female agent who testified, I can't

8    remember her name right now.  I'm sure Mr. Levitt does.

9              MR. LEVITT:  Special Agent Denise Biehn--

10             THE COURT:  Okay.

11             MR. LEVITT:  --testified, Your Honor.

12             MR. VOCCOLA:  That particular agent indicated, Your

13   Honor, that another agent told her about my client's voice or

14   identified the voice of Mr. Ramirez.  Then she also indicated

15   that that particular agent didn't actually hear the voice

16   firsthand but learned about the voice from Detective Long.  We

17   didn't know when it was identified, where it was identified,

18   where this action took place, if my memory serves me correct at

19   the detention hearing.  Once that issue came up obviously, you

20   know, it became of great concern to us in preparation of Mr.

21   Ramirez' defense.  Now--

22             THE COURT:  Well, I mean as to a voice identification

23   just like an eyewitness identification, you know, a photo

24   lineup or a photo array or a lineup or something like that it's

25   certainly subject to a hearing from the government indicate,

14

1  give you discovery as to who, when, where, you know when this

2  voice identification occurred, where it occurred and the manner

3  in which the identification was conducted.  That I think you're

4  entitled to just like I'd, you know, disclose the photographs

5  used in an array and the date and time and the place at which

6  the array was shown to any witnesses.  If that's what you're

7  seeking I don't if there's a real problem but get a grand jury

8  testimony is.  Now is that the type of information you're

9  seeking?

10         MR. VOCCOLA:  Yes, partially, Your Honor.

11         THE COURT:  What else would you be seeking?

12         MR. VOCCOLA:  Well, the motion also asks for any

13  copies of all orders of immunity and letters of immunity of

14  witnesses who testified before the Grand Jury.  I don't think

15  that-

16         THE COURT:  Well see that's covered by the, that is

17  covered by the local rules cause that's a promise, reward or

18  inducement.  And as I say I don't, it's a little hamper here

19  not having them before me but if you look at the local rules,

20  local Rule 116, that speaks exactly as to when you're entitled

21  to that.  I can't recall whether that's something up front or

22  is that 21 days before trial, do you recall, Mr. Levitt?

23         MR. LEVITT:  Your Honor, the - it's sort of done in

24  both ways.  It is something that is covered with the automatic

25  disclosure.

15

1          THE COURT:  Okay.

2          MR. LEVITT:  It is something that was covered in the

3  letter that went out to--

4          THE COURT:  Okay.

5          MR. LEVITT:  --counsel.  And then it's also covered

6  again at 21 days--

7          THE COURT:  Okay.

8          MR. LEVITT:  --for anything that's happened in the

9  interim.

10          THE COURT:  Okay.

11          MR. LEVITT:  So anything that--

12          THE COURT:  Okay.  Well, that's something that's

13  covered by the local rules Mr., so that would not be something

14  that I would, Mr. Voccola, that's not something that I would,

15  you know, alter that timing.  Did you in your initial letter

16  indicate anyone, any of the witnesses who have received

17  immunity in this case?

18          MR. VOCCOLA:  The letter would address that, Your

19  Honor.  It would specifically refer to the--

20          THE COURT:  No, I asked Mr. Levitt if he--

21          MR. LEVITT:  Yeah.

22          MR. VOCCOLA:  All right.

23          THE COURT:  --if he in his initial disclosures

24  indicated as to whether or not or disclosed any witnesses who

25  received immunity who are going to testify at trial?

16

1          MR. LEVITT:  I did, Your Honor.

2          THE COURT:  Okay.

3          MR. LEVITT:  I don't believe there were any.

4          THE COURT:  Okay.  So that answers that.

5          MR. VOCCOLA:  Right.

6          THE COURT:  Now what else did you need with respect

7  to this voice identification?

8          MR. VOCCOLA:  With respect to the voice

9  identification I think we addressed that, Your Honor.

10          THE COURT:  All right.  How about--

11          MR. LEVITT:  Your Honor, could I just speak to that

12  for a moment because I think this is - I am more than happy to

13  provide all that information that you just addressed with

14  respect to when it happened, who did it--

15          THE COURT:  Yep.

16          MR. LEVITT:  --and this is the type of thing that

17  wouldn't be done by most--

18          THE COURT:  You're right.  Now we're getting back

19  into the letter--

20          MR. LEVITT:  Yeah.  I mean--

21          THE COURT:  --area.  You're right.  No, you're right.

22          MR. LEVITT:  I mean if Mr. Voccola picked up the

23  phone and called me and asked me for that and said, you know,

24  I'll follow it up with a letter, I would have said fine.

25          THE COURT:  Okay.  I think he's got a point there.

1   You know, when I was talking about Grand Jury I, you know, it

2   was this stuff about the number of grand jurors and all that

3   and that's why I was saying that that was really outside the

4   purview of the local rules.  But this really is, so I think in

5   your letter that you're going to send to Mr. Levitt ask what

6   you want to ask about the voice identification.  Don't ask for

7   grand jury transcripts because I can't – and he's going to say

8   no to that and I'm going to say no to that because the law

9   requires me to say no to that.  But as far as, you know, how

10  the voice identification procedure occurred, when, where,

11  manner, et cetera, you know, I think he's going to be willing

12  to give you that so just include that in your letter.

13          If for some reason once you got the letter, his

14  answer to the letter you're dissatisfied then you can file the

15  motion.  That was the whole idea you see behind this letter

16  writing.  The idea is write a letter to the government.

17  They're liable to give you a lot of stuff in which case there's

18  no need for any motion.  So let's do that with respect to the

19  voice identification.

20          Now is there anything else with respect to the grand

21  jury?  We got the – he's indicated that the immunity thing is

22  covered by the local rules.  The voice identification you're

23  going to ask him for the discovery and he's indicated he's

24  willing to give you certain discovery with respect to that.

25  What else is here that you're entitled to on this motion for

18

1   disclosure of grand jury information?

2        MR. VOCCOLA:  Well, Your Honor, we just, I mean we

3   have an abundance of just I guess procedural caution on our

4   behalf.  We asked how many grand jurors were present and how

5   many actually deliberated.  Who was there initially and how

6   many actually participated in the deliberation.

7        THE COURT:  Yeah, I don't think you're entitled to

8   that Mr. Voccola.  There has to be something more than – it's

9   not something you just routinely ask for.  There's got to be

10  some particularized need for that.  The First Circuit has held

11  that.  I can remember when I was an assistant U.S. attorney

12  reading a case whose name I can't recall at the present time,

13  but Judge Aldridge wrote an opinion with respect to that issue.

14       All right, I'm going to deny the motion for

15  disclosure of Grand Jury information.  As I say you have the

16  information about the immunities and you're going to ask for

17  the voice identification in your letter.  And the motion for

18  exculpatory evidence is denied without prejudice.  And the

19  motion for a 12(b) designation is withdrawn.

20       Okay, anything else I need to take up?

21       MR. VOCCOLA:  Nothing else, Your Honor.

22       THE COURT:  Okay.  Thank you very much.

23  //

24  //

25  //

19

CERTIFICATION

1

2     I, Maryann V. Young, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  digital sound recording of the proceedings in the

5  above-entitled matter.

6

7  /s/ Maryann V. Young                    July 10, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25